# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JONATHAN P. ROSE,**

    **Petitioner,**

v.                                                                                     **Civil Action No. 3:16cv31**
                                                                                             **(GROH)**

**WARDEN C. WILLIAMS,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On March 23, 2016, *pro se* Petitioner, Jonathan P. Rose, an inmate at FCI Gilmer, filed a Habeas Corpus petition pursuant to 28 U.S.C. § 2241 challenging the execution of his federal sentence in relation to a sentence imposed by the State of Michigan. ECF No. 1. On April 14, 2016, Petitioner was granted leave to proceed *in forma pauperis*. ECF No. 9. On April 14, 2016, this Court made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against Respondent. ECF No. 10. On April 22, 2016, Respondent filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment and Response to Order to Show Cause. ECF No. 16. On April 25, 2016, the court issued a *Roseboro* notice; and on May 2, 2016, Petitioner filed a reply. ECF No. 16. On November 9, 2016, Respondent was ordered to file a supplemental memorandum, which he filed on November 22, 2016. ECF No. 18. On December 12, 2016, Petitioner filed a reply. ECF No. 27.

### II. FACTS

On July 23, 2004, Petitioner was arrested by state authorities in Michigan. At the time of his arrest, Petitioner was on parole from a state sentence of six to twenty years, which was imposed in Wayne County, Michigan on May 13, 1998. ECF No. 13-1 at 6.

On February 24, 2005, federal authorities borrowed Petitioner from state authorities pursuant to a writ of habeas corpus ad prosequendum. ECF No. 13-1 at 24. Petitioner was returned to state authorities on March 2, 2005. *Id.* On June 2, 2005, Petitioner was sentenced by the state to a 7-year, 6-month to 20 year term of imprisonment on Count 1 and a 2 year term of imprisonment on Count 2. ECF No. 13-1 at 12. Furthermore, the sentence on Count 1 was consecutive to Count 2, and the sentences on Counts 1 and 2 were consecutive to parole.[1] *Id.*

Thereafter, Petitioner was borrowed via a writ by federal authorities on a number of occasions. ECF No. 13-1 at 24. On April 20, 2006, Petitioner was sentenced in the United States District Court for the Eastern District of Michigan to a 120 month term of imprisonment. The federal judgment included language that Petitioner's federal sentence was to commence on the earlier of December 1, 2009, or when Petitioner was released from the Michigan Department of Corrections. *Id.* at 26. Petitioner was returned to the state on April 21, 2006 and remained in state custody until he was paroled on December 3, 2014. *Id*. at 24.

Based on the language contained in the judgment of the Eastern District of Michigan, the BOP approved Petitioner for a *nunc pro tunc* designation, and his federal sentence commenced on December 1, 2009. Petitioner's projected release date - the date on which he will complete serving

---

[1]Petitioner disputes that the sentences were ordered consecutive to parole, i.e. consecutive to the remainder of the sentence for which his was parole was rescinded. However, as addressed more fully in analysis portion of the R&R, this Court believes the sentences were indeed ordered to run consecutive to parole.

his federal sentence with consideration for good conduct time - is August 17, 2018.

### III. CONTENTIONS OF THE PARTIES

**A. The Petition**

Petitioner maintains that federal authorities placed a detainer on him on December 8, 2004.[2] Accordingly, Petitioner contends that he was officially in federal custody as of that date. Therefore, Petitioner is seeking credit against his federal sentence for the period from December 8, 2004, when the detainer was lodged, until June 2, 2005, when he was sentenced by state authorities. Petitioner maintains that he is entitled to this credit because he believes that neither the Michigan State Court, nor the Michigan Department of Corrections has given him credit for this time.

**B. Motion to Dismiss/Summary Judgment**

Respondent maintains that Petitioner's federal sentence commenced on December 1, 2009, based on a *nun pro tunc* designation in conformity with his federal judgment. Respondent further maintains that Petitioner is not entitled to any additional credit because all of the time he spent in custody prior to the December 1, 2009, commencement of his federal sentence was credited against his state sentences.

**C. Petitioner's Reply**

In his reply, Petitioner argues that he was never convicted of a parole violation nor sentenced to a term of confinement for a parole violation. Furthermore, Petitioner notes that there is no court record of any action taken as a result of his parole violation. Petitioner further explains his reasoning

---

[2]This Court can find no support for this allegation in the materials filed by either Petitioner or Respondent although a detainer was clearly lodged on November 27, 2013. ECF No. 13-1 at 23. However, for purposes of the R&R, this Court has assumed that a detainer was in fact issued on December 8, 2008.

that he was in federal custody as of December 8, 2004, when he alleges the federal detainer was issued. Specifically, Petitioner argues that had he been able to post the bond set by the Michigan State Court in Case No. 04-008300-1, he would not have been released, but instead, would have been held in federal custody pursuant to the detainer. Therefore, Petitioner again requests that his federal sentence be credited with the time he spent in custody from December 8, 2004, through June 2, 2005.

**D. Respondent's Supplemental Response**

In response to the undersigned's directive to clarify his assertion that the Petitioner's parole was rescinded effective July 23, 2004, and further, that Petitioner was not entitled to credit against his federal sentence for the disputed period of December 8, 2004, through June 2, 2005, Respondent filed a supplemental response with a Declaration from Forest Kelly which indicates that when Petitioner was initially release by state authorities on January 24, 2003, he had maximum release date of April 30, 2014. ECF No. 21-1 at 2. Additionally, the Declaration states that the State of Michigan calculated Petitioner's consecutive state sentences by aggregating his undischarged 20-year maximum term with the new 9-year and 6-month to 22-year sentence, to form a 9-year and 6-month to 42-year term of confinement. *Id.* at 3. The 42-year aggregate maximum term was computed as commencing on January 14, 1997, with zero (0) days of "dead time" resulting in an adjusted maximum date of January 13, 2039, prior to the application of 685 days of disciplinary credits. *Id.* Accordingly, Respondent maintains that this calculation clearly establishes that Petitioner received day for day credit – whether in official detention or in parole supervision – against his state sentences since January 14, 1997.

**E. Petitioner's Reply**

4

Petitioner continues to argue that the time he spent in detention from December 8, 2004, through June 2, 2005, has not been applied to any sentence imposed by the State of Michigan, and he is therefore entitled to credit for this period of time. Petitioner specifically challenges the BOP's determination that his Michigan sentence, imposed on June 2, 2005, was ordered to run consecutively to parole. In addition, he contends that the period he spent in jail after his arrest on July 23, 2004, until he was sentenced on June 2, 2005, was "'served on parole,' not **credited** in any shape or form to a state jail sentence." ECF No. 27 at 6 (emphasis in original).

## IV. STANDARD OF REVIEW

### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *see also Martin,* 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief."

*Conley,* 355 U.S. at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Conley,* 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States,* 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal,* where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison,* 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon ,* 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

### A. *Nunc Pro Tunc* Designation

A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). *See United States v. Evans*, 159 F.3d 908, 911 (4th Cir. 1998) ("A federal sentence does not commence until the Attorney General receives the defendant into [his] 'custody'' for service of that sentence."). The earliest possible date that a sentence can commence is the date of imposition. *See U.S. v. McLean*, 867 F.2d 609 (4th Cir. 1989) (unpublished) ("A federal sentence cannot commence prior to the date it is pronounced").

7

However, in some cases, such as the instant one, calculation of a federal prisoner's sentence may commence prior to the prisoner's arrival at a federal facility for service of his federal sentence. Title 18 U.S.C. § 3621(b) gives the BOP the authority to "designate the place of [a] prisoner's imprisonment." Therefore, where a federal court orders its sentence to run concurrent with a previously imposed state sentence, a *nunc pro tunc* designation can be made, whereby the BOP designates a state facility as the place for service of a federal sentence. *See U.S. v. Evans*, 159 F.3d 908, 9111-12 (4th Cir. 1998) (a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the BOP agrees to designate the state facility for service of that federal sentence.").

In the instant case, there is no dispute that Petitioner's federal sentencing order directed that he be committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 120 months, said sentence to commence on the earlier of December 1, 2009, or when Petitioner was released from his prior undischarged sentence he was serving with the Michigan Department of Corrections. ECF No. 13-1 at 27. Because Petitioner was not released from state custody until December 3, 2014, the BOP made a *nunc pro tunc* designation, and his sentence was deemed to have commenced on December 1, 2009. Therefore, the sole issue before this Court is whether Petitioner is entitled to credit for time he spent in custody from December 8, 2004, when a federal detainer was lodged through June 2, 2005, when his most current state sentence was imposed.

**B. Prior Custody Credit**

Although Petitioner's federal sentence did not commence until December 1, 2009, he argues that he is entitled to prior custody credit. 18 U.S.C. § 3585(b), states:

8

> [D]efendant shall be given credit toward the service of a term of
> imprisonment for any time he spent in official detention prior
> to the date the sentence commences (1) as a result of the offense
> for which the sentence was imposed or (2) as a result of any other
> charge for which the defendant was arrested after the commission
> of the offense for which the sentence was imposed; that has not
> been credited against another sentence.

Petitioner maintains that under that statutory provision, he is entitled to credit against his federal sentence from December 8, 2004, when a federal detainer was lodged against him until June 2, 2005, when he was sentenced in state court. In advancing this argument, Petitioner maintains that this period of time was not applied to his state sentence and did not otherwise benefit him with respect to his state sentence.

The undersigned acknowledges that the sentence calculation in this case is confusing, and it is understandable that Petitioner believes he is entitled to prior custody credit towards his federal sentence. However, a careful review of the exhibits, including records from the Michigan Department of Corrections, establishes that Petitioner is not entitled to any prior custody credit, and his sentence as calculated by the BOP is correct.

Turning first to Petitioner's argument that a federal detainer was lodged against him on December 9, 2004, thus placing him in federal custody, he is mistaken in his reasoning. Where, as here, a prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction applies. Primary jurisdiction is explained in *United States v. Smith*:

> In the context of successive criminal prosecutions by different sovereignties this
> "chief rule which preserves our two systems of courts from actual conflict of
> jurisdiction" means that the sovereignty which first arrests the individual acquires
> the right to prior exclusive jurisdiction over him,…and this plenary jurisdiction
> is not exhausted until there has been complete compliance with the terms of,
> and service of any sentence imposed by, the judgment of conviction entered against

9

the individual by the courts of that first sovereignty…

*United States v. Smith*, 812 F.Supp. 368, 371 (E.D.N.Y. 1993) (quoting *In re Liberatore*, 574 F.2d 78 (2d Cir. 1978)).

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. *See Coles v. DeBoo*, No. 2:10cv70, 2010 WL 3767113 (N.D.W.Va. September 27, 2010; *Chambers v. Holland*, 920 F.Supp. 618, 622 (M.D. Pa. 1998), *citing United States v. Warren*, 610 F.2d 680, 684-85 (9th Cir. 1980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence.").

In the instant case, it is clear that on January 24, 2003, Petitioner was released by state authorities, via parole [ECF No. 25 at 9], with a maximum date of April 30, 2014. ECF No. 21-1 at 7. On July 23, 2004, prior to completion of his parole term, Petitioner was arrested by state authorities in Michigan for new criminal conduct. Petitioner acknowledges that he was unable to post bond. ECF No. 27 at 4. Therefore, he remained in jail through the date that he was sentenced in State court on June 6, 2005. Accordingly, even if a detainer was lodged, because Petitioner was unable to post bond, he was never released on bail, and primary jurisdiction remained vested in the State of Michigan.

Petitioner next argues that his State sentence, imposed on June 2, 2005, was not imposed consecutive to the sentence remaining on the sentence for which he was paroled. In particular, Petitioner argues that the typed words, "To Parole" on his judgment are not related to his sentence, but instead, relate only to an assessment fee. ECF No. 27 at 3. However, this Court disagrees. In

reading the Judgment of Sentence, item 7 reads " Count 1 consecutive to Count 2. Counts 1 and 2 consecutive to parole." ECF No. 13-1 at 12. While there is a period after the second "consecutive," that period is part of the form and was not typed. However the period after parole was typed on the form and indicates that it is a phrase continuing the sentencing provision. Furthermore, although Petitioner alleges that "to parole" reflects that he was directed to make payments to parole, section 8 is not checked, and no amount is entered for the payment. In fact, there is separate document, "Order to Remit Prisoners Funds for Fines, Costs, and Assessments," which includes a crime victim assessment of $60 and state minimum costs of $120, for a total of $180. ECF No. 27-4 at 2. On November 7, 2014, Petitioner was notified by the Michigan Parole Board that he must pay the $120 state cost, and said payment was payable when the parole order was entered, but could be paid in monthly installments to be determined by the field agent. ECF No. 27-5 at 2. Therefore, this Court is of the opinion that Petitioner's sentence, imposed on June 22, 2005, was indeed made consecutive to the undischarged portion of the state sentence imposed on May 13, 1998.

Finally, Petitioner argues that no portion of his incarceration from December 8, 2004, through June 2, 2005, was credited against his state sentence, and therefore, should be credited against his federal sentence. This Court agrees with Petitioner that this nearly six month period was not applied toward his sentence imposed on June 2, 2005. The Judgment of Sentence clearly indicates that Petitioner did not receive any jail credits. ECF No. 13-1 at 12. However, the time was credited against the undischarged portion of the sentence for which he was paroled.

A Basic Information Sheet from the Michigan Department of Corrections, clearly notified Petitioner that "[b]y reason of incurring another sentence while on parole, the Parole Board has rescinded the parole order under which you were released. You will be scheduled for a hearing in

accordance with the minimum expiration dates stated on your new basic information sheet." ECF No. 13-1 at 11. Moreover, a records specialist with the Michigan Department of Corrections notified the BOP that the "days (314) that he spent in jail after his arrest on July 23, 2004 until he was sentenced on June 2, 2005 are not awarded as jail credit on the new sentences (C18 and C19), but it is time served on his parole sentences (all of the sentences that he was serving when he was paroled). ECF No. 21-1 at 7. This notification comports with Michigan law.

Under Michigan law, "[a] parole shall be construed as a permit to the prisoner to leave the prison, and not as a release." MCL 791.238 (6). Furthermore, "[w]hen a parolee is arrested for a new criminal offense, he is held on a parole detainer until he is convicted of that offense, and he is not entitled to credit for time served in jail on the sentence for the new offense." *People v. Seiders*, 262 Mich. App. 702, 705, 686 N.W.2d 821 (2004) citing MCL 791.238(3). Instead, a parole detainee convicted of a new offense is entitled to have jail credit applied exclusively to the sentence from which parole was granted. *Id*.

Accordingly, because all of the time Petitioner spent detained from July 23, 2004, until he was sentenced on June 2, 2005, were credited towards the remainder of his sentences that he was serving when he was paroled, the period December 8, 2004, until July 2, 2005, cannot be applied against his federal sentence as prior custody credit because it would amount to double credit in violation of 18 U.S.C. § 3585(b).³ *See United States v. Wilson*, 503 U.S. 329, 337 (1992) (§3585(b) precludes double credit).

---

³This Court acknowledges that there are limited circumstances when a prisoner is entitled to prior custody credit toward a federal sentence for time that has also been applied to a state sentence. *See Willis v. United States*, 438 F.2d 923 (5th Cir. 1971); *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993). However, as explained in Respondent's Memorandum, Petitioner does not meet the criteria for such credit. *See* ECF No. 13 at 7-9. Moreover, Petitioner does not argue otherwise.

## VI. RECOMMENDATION

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 12] be **GRANTED**, and Petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 128 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: December 28, 2016.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE